Case number 243929 ORG Holdings Ltd v. BMW Financial Services NA LLC. Argument not to exceed 15 minutes per side. Ms. Strickland, you may. Thank you. Good morning, Your Honor. It's Julia Strickland of Steptoe LLP on behalf of BMW FS, and we're reserving five minutes for rebuttal. All right. And I'll just start by saying it's nice to begin with something so cheerful as the admission of a law clerk, so that was wonderful. Thank you. Let me start by saying the issue before this court is quite straightforward. BMW FS is plainly understood by ORG as the lessee of a BMW vehicle to be engaged in a transaction to which BMW FS is integral. Whether denominated an agent, a third-party beneficiary, or an affiliate, there can be little question but that BMW FS has the right to enforce the arbitration agreement against ORG contained in the lease at issue. So the analysis begins, as is typically the case with an arbitration agreement, with looking at the agreement itself. Before you get into that, isn't it, or at least one concern, is that BMW Financial Services is not a party to the agreement that contains the arbitration provision, and consequently, arguably, it doesn't have a right to enforce the arbitration provision. How do you get around that? Well, Your Honor, very simply, as I said and as is fully briefed, BMW FS is an agent as a matter of law, and this is where the court below, I believe, went awry, which is, you have to look at the agreement as a whole, and the Mohamed case is quite clear on this, which is you can't read out parts of the agreement. To the contrary, when... Can I just interject at this point that what's bothering me about your argument is that that's an easier argument to make if you don't have a specific part of the contract that says one of these two may demand arbitration. It's in the disjunctive, one of them, either or, and BMW FS is not the one that the contract says may demand arbitration. So you're saying that agency overrides that explicit part of the contract? Well, Your Honor, I would respectfully disagree with Your Honor's interpretation of the contract, because I think you need to look at the agreement as a whole, which is what the cases do say. I think your question suggests also reading out the remainder of the agreement. The agreement starts at the very, very top by referencing BMW FS. At the very top, it says it's an agreement with BMW FS, at the very top. Then, if you look at that section in which there's the checkbox, importantly, the court below, and Your Honor's reading would also do this, reads out the following sentence, and the exact language of that sentence is that BMW FS will administer this lease on behalf of itself or any S&E, and that's in that very same box right after the checkbox. Okay, I hate to interrupt you, but then it says for the box to be checked that the S&E is Financial Services Vehicle Trust, not BMW Financial Services. So they've identified an S&E that could benefit from that agreement, and presumably the arbitration clause, but that S&E is not BMW Financial Services. But again, Your Honor, I think you have to read the next sentence in that exact same box, which is very clear. It says BMW FS will administer this lease on behalf of itself or any S&E. There is no, I'm sorry. So is BMW FS then always gets to arbitrate, because they're always the administrator in this contract? Probably the answer to that question is yes. Obviously, arbitration cases are fact-specific, but the way the... Like assuming the disputed issue is within the scope of the agreement in terms of the who, is who can invoke arbitration in terms of the you and I and who can do it, because BMW FS is always the administrator, always administering it. They can always invoke arbitration. Taking your answer, I mean, taking your question, Your Honor, as framed, the answer is likely yes. Why have an or then to judge Batchelder's question? I mean, as I read it, you're saying the administrator, who is always BMW FS under the text of the agreement, can always arbitrate. Then why in the line before, is it telling me one or the other? The line before actually has to do with who owns the paper, because what you really, again, you need to get to the next sentence, but also read the agreement as a whole, which is just, I think it's worth talking a little bit about the practicalities of why that box is checked. The implication of that box is really who owns the paper. But it says, the point of the box is who can demand arbitration. But that isn't actually what the box says. The box actually says who owns the agreement. Who can demand arbitration is not in that section. It's in the arbitration section. It explains who the I is and who the U is, right? And then the lessors and who the assignee is, right? So it's telling us who's bound here. And then that same U and I language is then used when you go to the arbitration section. It is, but this also says that the arbitration agreement extends to affiliates, successors or assignees, and any third parties, if I assert a claim against such third parties, and then broadly arising out of the terms of the arbitration agreement, which is one of the very broad forms of arbitration agreement, extending to disputes regarding any such relationship with third parties with respect to the lease. And I think, again, this goes to my fundamental point here. You have to look at the agreement as a whole. And I do believe, and I understand Your Honor's questions, that you have to take it, look at all of the references to BMWFS throughout. It is quite clear that BMWFS's responsibilities under this agreement are as an agent, the agent of the assignee. There's no dispute. FSVT is the assignee under the agreement. Not a question. But the simplest path here and the most obvious as a matter of law and also based on the contract itself is viewing BMWFS correctly as the agent of the assignee. It has broad powers. Those are very clear in the agreement. And I do want to bring to the Court's attention specifically, since the dispute here relates to the insurance question, the obligation to provide insurance is very clearly set forth in that agreement in paragraph 20. But if you look at paragraph 17, which talks about insurance notification, you will note that notification with respect to insurance matters goes to BMWFS. You'll see at the email address the name is blanked out for, I guess, privacy purposes. But the notices regarding insurance go directly to BMWFS.com. So BMWFS's role is extremely broad. It's quite clear under the agreement. It's equally clear, if not more clear, under the servicing agreement. And with respect to the question of you, it's lessor or lessor's assignee. I'm not following you for a second and I might have the wrong version. Are you saying in paragraph 17 of the agreement where it says insurance company and it says Cincinnati Insurance? No, correct. But if you look at the notice portion of it, it says that notices go to BMWFS. There's an email address which has been blanked out at BMWFS. BMWFS's role is absolutely included throughout this agreement. I would liken this case most closely to the situation in Neal, which, although it was an Eighth Circuit case, was decided under Ohio law. And that's a situation in which there was a loan. And the loan was sold. In fact, it's even a less clear situation than this. In that case, the loan was sold to Navient. Navient was not identified in the original agreement. Navient then used a related entity to service the loan. And the Eighth Circuit concluded that that servicer could enforce the arbitration agreement. Why? Because in a situation very similar to the one before this court, because it was clearly understood that servicing would be within the scope of that agreement. And the issue that was before the court in that case involved how the loan was servicing. There it was how the interest rate was charged. Here it's how the insurance is dealt with, clearly provided for in the agreement, the insurance obligation. Very similar. And the Eighth Circuit tellingly criticized counsel, for plaintiff in that case, for essentially exploiting, which is exactly what's happened here, the difference between the owner of the paper, in that case Navient, which bought it after the fact, and the servicer, which was an affiliate, and basically said, you can't do that. You can't exploit the fact that the actual party to the agreement has decided to service, and now you can go sue the servicer, trying to avoid arbitration. And with that, I believe my time, I'm sorry, my time is up. Yes. Thank you, Your Honor. If you want to take time from your rebuttal time. Thank you. Thank you. Good morning. May it please the Court. My name is Patrick Perotti with the law firm of Dworkin and Bernstein in Cleveland, and I'm here with my co-counsel James DeRoche. Counsel, could you speak up a little bit, volume wise? Patrick Perotti with Dworkin and Bernstein, and I'm here with my co-counsel James DeRoche. We're not suing any party of the contract, and we're not suing on the contract. In fact, the contract is silent, as the district court says at page ID 251. The allegations of misconduct implicate the defendant alone. The contract doesn't talk about the claim we're making. The contract specifically does not deal with that issue. This is an issue of what's called positive or negative gap. Negative gap means you buy insurance, the car gets totaled, and you still owe money on the lease. If that's the situation, the lease is very clear, you must pay the difference. This is the opposite situation. These are BMWs. These are expensive cars. The car is totaled, and the insurance company pays, I think, $98,000, which is $16,000 more than the person owed on the lease. And we said, okay, well, where's the rest of the money? They said, they being the defendant, said, we're keeping it. You can't do that. We sued them, and they said, no, no, arbitration clause. I think it's Judge Batchelder. Is it your argument that because they kept the money, they are not acting as an agent of the assignee at that time? If they didn't keep the money, would you agree that they were an agent of the assignee? We don't care whether they're an agent. We're not suing them under agency theory. We're suing them in equity. We're suing them under unjust enrichment. We couldn't sue them under an agency theory, because then there would be a contract, and we'd have to follow the contract. The contract here doesn't apply to this issue. We can only sue in unjust enrichment under Ohio law, because they stole the money. And in fact, if you look, they're referring to the servicing agreement. The servicing agreement requires them to give the money to the principal. They didn't give the money to the principal. They kept the money. More important, they lied to the Securities and Exchange Commission in ten different filings they made, indicating that in this situation, the money is to go to the principal. They didn't do that. They kept this money. This is like, I think we see this most often in the cases that we handle throughout the 80s and 90s, and that is servicers of home loans. The servicer doesn't own anything. The servicer doesn't own the paper, just like they don't own the paper. As a result, the servicer has no interest in the property or the proceeds. They have no interest in the property or the proceeds either, so why are they holding it? I think Judge Batchelder keyed in on the issue, and that is, in these cases, we have, according to the U.S. Supreme Court and this court in Attracure, and Attracure answers this question. There are four different steps, and that's talked about in Stout v. J.D. Beireiter by this court. There's four different steps. The first step in arbitration is you determine who is entitled to enforce the arbitration clause. Then the second step is, what is the scope of the agreement between those parties? She's conflating these two different arguments, these two different issues identified by the high court and by this court. You first must determine who is entitled to enforce. Then you go to this, well, the language of the contract says the claim is broad, and it's this and that and the other thing. You don't get there. This court made that clear in Attracure. This court in Attracure talked about the Arnold decision from, I think, the 90s and this presumption. The U.S. Supreme Court eliminated that. They eliminated what Judge Murphy called dice-loading. You don't dice-load anymore on this issue. You do dice-load on the second issue. That's because once you determine that parties have an arbitration agreement, then there is a federal common law presumption that the arbitration agreement will be broadly construed as to all issues. Any ambiguity, you resolve it in favor of arbitration. But on this issue, as this court said in binding circuit precedent in Attracure, there is a presumption against arbitration because you must look at the contract law of the state to determine whether the parties agreed to arbitration. The contract law of the state then looks at what? It looks at the language of the agreement. And the language of the agreement, as you said, Your Honor, has a very specific provision that deals not with the scope, but it first deals with who can enforce this arbitration agreement. There's a lot of cases that they cite where the arbitration agreement says nothing about who can enforce. It says any dispute arising out of or related to, you've And it doesn't explain who. This contract, and again, I wrote to my co-counsel as we were listening to the argument, I said, Who wrote this? My client didn't write this. Ohio. Contra preferendum. This court in the case that we dealt with with the labor depreciation cases. Contra preferendum. Who wrote the agreement? The agreement here was written by them. By BMW. And BMW took pains to write it to say on the issue of who, who can be enforcing this arbitration agreement? It is you and we and all S&Es. There are really three different types of clauses in this world. First one is the one that says any disagreement under this contract. That doesn't say about who. So there's no presumption or clarity. You have to figure it out. Then maybe a wander into the agency and a stop on all these other things. That's not this case. The second one is they say Judge Clay can enforce the agreement. That's it. It's a named person. That's not this one either, believe it or not. There's the third one. It says Judge Clay and not Judge Batchelder. They wrote this so it was disjunctive in the exclusive. They said you can enforce it but you can't. This group is the you can't group. And again, as the district court said, you must look in the first step of the analysis to the contract language under the contract law of the state of Ohio. And contracts in Ohio are determined like just about every other state based on what the say. And the words here are absolutely unambiguous. They say who can enforce it. They define who is the S&E and they exclude her client. Finally, when they talk about reading the whole contract, go to page ID 233 in the district court's opinion and read the clause dealing with the class action waiver. That's really why we're here. They don't want to bring a class action. That's all that this is about. And the class action waiver is unusual because it says notwithstanding any other provision of the lease or the arbitration clause, if either you or I elect to arbitrate a claim, neither you or I will have the right to bring a class action. Then it goes on to say if the class action waiver is limited or cannot be enforced, which it can't here because they can't arbitrate, then the arbitration provision is void. That's because they don't want the horror of having a class arbitration. That's their worst nightmare. Then they don't get a judicial officer or an appeals court. They get one person to decide what happens to all the thousands and thousands of people who are cheated out of their money. So if you look throughout this contract, it's very clear that you or I means exactly what it says. You or I means BMW of Westlake, we're not suing them, they didn't do anything wrong, or my client, or the S&E of BMW of Westlake, which could be her client unless the box is checked. They checked the box, not I, they checked it. And that excluded their client from any right to arbitration. If there are no other questions, thank you very much, your honors. I ask you to affirm the district court. Thank you. Thank you. Let me respond to a few of the points that are made. First of all, we're not conflating the question of enforceability and the question of scope. They're two different questions. What our point is with respect to the language in the arbitration agreement and enforceability is, again, you need to read the contract together in terms of all of its constituent parts. And the breadth of the claims, which says that claims extend to claims against successors, assigns, and third parties, is an important part of that reading of the entire agreement. Secondly, we're not here arguing about presumptions either. We're not talking about whether the dice are loaded. We're not talking about the presumption in favor or not of arbitrability. We actually win based on the agreement and the straightforward law about agency in Ohio, including as this court set forth in the Altecure case and as addressed in the Neal case and elsewhere under our Ohio law. With respect to the we're not suing BMW FS under the contract, that's such a transparently questionable argument. It falls right into the Neal case. It's really an effort to exploit the agreement and the different roles of the parties. FSVT is the assignee, there's no question. BMW FS is the agent. This court, even in the Altecure case, said, look, an agency relationship can actually exist without a party being named in a contract. It's a different analysis than the third party beneficiary. Can it exist with a party being excluded by a contract? And your honor, we have, yes, that is correct, but as your honor knows, we don't view this case in that way. We believe that the party is actually included in the contract, it's contemplated in the contract, and it's very clear. But in any event, I'm guessing it's not as clear as you think or we wouldn't be fighting about it, but go ahead. That's why I went to law school, your honor, because I love living in shades of gray. But I actually think it's quite clear here. I mean, when I sat down to prepare again, having, you know, been involved in the briefs, to me, actually, this case is quite clear that they're the agent of the assignee when you read the entire agreement. And when you see how this plays out, the fact is we wouldn't be here but for the agreement. The insurance obligation requires them to provide insurance. This isn't something they did on their own. We might have an entirely different case if they went out and bought insurance on their own, it wasn't covered in the agreement, and then there was a fight about who had the right to it. But that's not the situation here. Insurance is required by the agreement which they signed, so insurance is very integral to this agreement. And again, I know I'm much more like Neil, where there's an effort to exploit the existence of the actual owner of the contract and the servicer of the contract. Then let me address some of the other points, which is the, I talked about not conflating. We're not relying on the presumption, and Alticure actually says that the contract can be enforced by an agent if it's not named, which we talked about. We're also not here to debate the merits of the underlying claim. That's not properly before this court. I know your honors are not intending to weigh in on it. Plaintiffs keep coming back to it, but that's not the issue before this court. We're also not here to debate class action policy, which is something that the Supreme Court has weighed in on multiple times in arbitration cases. First of all, it wasn't briefed, but secondly, that's not the point of this argument. The point is that there are multiple paths through which BMWFS can actually enforce the agreement. Agency is clearly one of them. It can also enforce the agreement as an affiliate, and we fully briefed that. It can also enforce the agreement as a third-party beneficiary of the agreement. In both the affiliate situation and the third-party beneficiary situation, the test is very similar, and I think the court would probably agree with me. There's a fair amount of merging of those concepts if you look at the case law, but the notion is whether there's control exercised over that third-party beneficiary and also whether they have reciprocal rights, essentially, under the agreement. There can be no question under the agreement that as administrator of the lease, BMWFS is empowered to enforce the agreement, and it does it all the time, those agreements. With that, I know my time is up. I thank your honors for your attention. We believe that the decision should actually be reversed or at a minimum remanded for findings of fact on the issues of agency, affiliate, and third-party beneficiary. Thank you again. Thank you very much, and the case is submitted.